■ In the Matter of ZECHARIAH J., a Child Alleged to be Neglected. ORANGE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; VALRICK J., Appellant. [923 NYS2d 653]—

In a proceeding pursuant to Social Services Law 384-b to terminate parental rights on the ground of permanent neglect, the father appeals from an order of fact-finding and disposition of the Family Court, Orange County (Kiedaisch, J.), entered March 19, 2010, which, after fact-finding and dispositional hearings, found that he permanently neglected the subject child, terminated his parental rights, and transferred guardianship and custody of the subject child to the Orange County Department of Social Services for the purpose of adoption.

Ordered that the order is affirmed, without costs or disbursements.

Contrary to the father's contentions, the Family Court properly found that the agency exercised diligent efforts to strengthen the parent-child relationship and to reunite the father and child by, among other things, scheduling regular and meaningful visits with the child and referring the father to programs providing domestic violence counseling and substance abuse treatment (*see* Social Services Law § 384-b [7] [f]; *Matter of Sheila G.*, 61 NY2d 368, 373 [1984]; *Matter of Elijah P. [C.I.P.]*, 76 AD3d 631 [2010]; *Matter of Tynell S.*, 43 AD3d 1171 [2007]; *Matter of Liam Francis P.*, 26 AD3d 385 [2006]). An agency that has exercised diligent efforts but is "faced with an uncooperative parent is deemed to have fulfilled its statutory obligations" (*Matter of Kahori Emmanuel A.*, 287 AD2d 452 [2001]; *see Matter of Star Leslie W.*, 63 NY2d 136, 144 [1984]; *Matter of Sheila G.*, 61 NY2d at 385). Notwithstanding the agency's efforts, the father failed to plan for the future of his child (*see* Social Services Law § 384-b [7] [c]). "At a minimum, parents must 'take steps to correct the conditions that led to the removal of the

child from their home' " (*Matter of Nathaniel T.*, 67 NY2d 838, 840 [1986], quoting *Matter of Leon RR*, 48 NY2d 117, 125 [1979]). "This parental obligation necessarily includes addressing and overcoming [the] specific personal and familial problems which initially endangered or proved harmful to the child, and which may in the future endanger or possibly harm the child" (*Matter of Sonia H.*, 177 AD2d 575, 576 [1991]; *see Matter of Leon RR*, 48 NY2d at 125; *Matter of Travis Lee G.*, 169 AD2d 769 [1991]).

Here, although the father maintained contact with the child, completed many of the services offered to him, and established suitable housing, he failed to gain insight into the problems that caused the child's removal and were preventing the child's return to his care. The father's assigned caseworkers and a substance abuse counselor testified that the father was uncooperative, hostile, reluctant to undergo treatment, and often missed treatment sessions, they smelled alcohol on his breath on several occasions while he was enrolled in a substance abuse program, and the father was discharged from his first substance abuse program without completing his treatment. Despite a previous order finding that he had neglected the child due to ongoing domestic violence between him and the child's mother, the father never acknowledged his responsibility for the removal of the child and continued to have contact with the child's mother, whom he claimed was violent and a drug abuser, thus showing his inability or unwillingness to provide a safe home for the child. Indeed, almost a year after the removal of the child, the father was arrested following a domestic dispute with the mother. Under these circumstances, the Family Court correctly found that, despite diligent efforts by the agency, the father failed to adequately plan for his child's future and, therefore, the child was permanently neglected (*see Matter of Leon RR*, 48 NY2d at 125; *Matter of Nicholas R. [Jason S.]*, 82 AD3d 1526 [2011]; *Matter of Jennifer R.*, 29 AD3d 1005, 1006 [2006]; *Matter of Justina Rose D.*, 28 AD3d 659, 660 [2006]; *Matter of Ajuwon H.*, 18 AD3d 752, 753 [2005]; *Matter of Sonia H.*, 177 AD2d at 576).

Furthermore, the Family Court properly determined that it was in the child's best interest to terminate the father's parental rights (*see Matter of Amber D.C. [Angelica C.]*, 79 AD3d 865 [2010]; *Matter of Justina Rose D.*, 28 AD3d 659 [2006]; *Matter of Perry T.K.*, 16 AD3d 687 [2005]). Termination of parental rights will free the child for adoption, providing him with the opportunity to have a permanent family (*see Matter of Michael B.*, 80 NY2d 299 [1992]). A suspended judgment was not ap-

propriate in light of the father's lack of insight into his problems, and his failure to acknowledge and address the primary issues which led to the child's removal in the first instance (*see Matter of Amber D.C. [Angelica C.]*, 79 AD3d 865 [2010]; *Matter of Amy B.*, 37 AD3d 600 [2007]). Angiolillo, J.P., Dickerson, Belen and Sgroi, JJ., concur.